**SO ORDERED.**

**SIGNED this 07 day of December, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

4.98 WESTGATE PARTNERS, LLC,    CASE NO. 11-05768-8-JRL
                                CHAPTER 11
    DEBTOR.

_____

## ORDER

This matter came before the court on the debtor's motion to value collateral and the Bank of Ozarks ("Ozarks") motion for relief from the automatic stay or in the alternative motion for adequate protection. A three-day hearing was held on October 24, 2011, November 4, 2011, and December 2, 2011 in Raleigh, North Carolina.

## BACKGROUND

The debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 29, 2011. The debtor is a single asset entity engaged in the business of developing real property in Brunswick County, North Carolina. On July 10, 2007, the debtor purchased a 4.98-acre tract of real property located on West Gate Drive in Leland, North Carolina ("property") for $1,892,500.00. On September 22, 2008, the debtor executed a promissory note in favor of Woodlands Bank for $1,440,000.00 ("note"). Ozarks, successor-in-interest to Woodlands Bank,

is the current holder of the note. As security for the note, Ozarks has a deed of trust on the property. On August 5, 2011, Ozarks filed a proof of claim in the debtor's case for $1,488,324.07. At the hearings, the debtor and Ozarks each tendered an expert appraiser to provide an opinion of value for the property by using the land sales comparison approach. Both appraisers testified that property in the Leland area has been declining at an average of five percent per year.

At the hearings, the debtor's expert appraiser testified that in his opinion, the market value of the property as of July 22, 2011 is $1,818,000.00. He also stated that it was merely coincidental that his opinion of value almost equaled the original purchase price. He made it clear to the court that he did not consider the original purchase price in deriving his opinion of value. Instead he relied on what he considered to be comparable land sales. The debtor's appraiser compared the debtor's property to four commercial properties within a three mile radius of the debtor's property. Importantly, he relied on a sale that took place in April 2008 of a 3.44 acre tract of land "located directly across West Gate Drive from the [property]." The appraiser also compared the debtor's property to the list price of one piece of commercial real estate that is currently on the market for sale, and to the sale price of two others. The appraiser noted that the listing comparable has been on the market for several years and the owner may not be highly motivated to sell the property at this time due to the poor market conditions. The appraiser also stated that he placed some weight on this listing, but did not give the comparable maximum weight. The appraiser testified that the northern part of Brunswick County around the Leland area, where the debtor's property is located, has withstood the recession much better than other areas and is coming back more quickly. He stated that the tax value of the property has

declined from $896,000.00 to $747,000.00 from 2007 to 2011, respectively.

Ozarks also presented testimony from an expert appraiser who testified that in his opinion the market value of the property as of May 1, 2011 is $1,200,000.00. He reached his opinion by comparing the debtor's property to four other land sales. The properties selected for comparison were much smaller in size than the debtor's property which required significant adjustments in the appraisal in order to make the properties comparable. Notably, the appraiser did not compare the debtor's property to the similar-sized tract across the street from the debtor's property that was sold in April 2008.

## DISCUSSION

Ozarks contends it is entitled to relief from the automatic stay pursuant to § 362(d)(1) and (2) of the Bankruptcy Code. The debtor contends that relief from the automatic stay is inappropriate because based on its appraised value there is equity in the property. Section 362 of the Bankruptcy Code provides that a debtor's bankruptcy petition automatically stays "any act to obtain possession of . . . or to exercise control over property of the estate," as well as "any act to collect . . . or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 362(a). However, the court may terminate the automatic stay for cause or if the debtor has no equity in the property and the property is not necessary to an effective reorganization. Id. § 362(d)(1) and (2).

Establishing the value of collateral is essential to a determination of whether a creditor is entitled to relief pursuant to § 362(d)(1) and (2) of the Bankruptcy Code. Specifically, the value of collateral is critical to (a) whether the debtor has equity in the property and (b) whether that equity is sufficient to adequately protect the creditor. Id. § 362(d)(1) and (2). Both appraisers in

this case determined the fair market value of the property by using the sales comparison approach. The court finds the debtor's appraisal more credible, but not dispositive. In reaching this conclusion the court notes that in making land sale comparisons, Ozarks' appraisal used parcels of land much smaller than 4.98 acres. This required the appraiser to make significant adjustments of thirty-five percent for two of the sales and sixty percent for the other two sales in order to make them comparable to the property. By the appraiser's own testimony, it is clear that adjustments in these ranges deprive the comparables of probative value. Additionally, Ozarks' appraisal failed to take into consideration a similar-sized tract of land across the street from the debtor's property. This comparable is by far the most credible land sale comparison that could have been used.

The debtor's appraisal had one serious flaw. His report states that the sales comparison approach "has its greatest validity when the properties used for its comparison have recently sold[.]" However, the debtor's appraisal included a "current listing" that tended to pull the overall property value upwards. The appraiser testified, on cross-examination with regard to the current listing, that he was uncertain as to how serious the seller was about selling the property, and suggested that the seller may not have priced the property competitively to attract a buyer in a reasonable time period. Thus the court finds that this comparable should be disregarded.

Based on the two appraisers' testimony, the court finds the value of the debtor's property to be $1,649,077.00. The court gives the comparable across the street from the debtor's property twice the weight of the other comparables used by the debtor's appraiser. This results in a per acre value of $331,140.00. Multiplying this value by 4.98 acres equals $1,649,077.00, the total value of the property. This value represents a thirteen percent decline in property value since the

property was first purchased by the debtor. Although the appraisers testified that property in the Leland area has generally been declining at an average of five percent per year, this is not controlling with regard to any piece of property. Moreover, the debtor's appraiser testified, convincingly, that the northern part of Brunswick County around Leland, where the debtor's property is located, has withstood the recession much better than other markets. Additionally, the tax value of the property has declined from $896,400.00 to $747,000.00 from 2007 to 2011, respectively. That equals approximately a sixteen percent decline, which is roughly congruent with the court's finding that the property has declined in value at a rate of thirteen percent from when the land was first purchased.

The next issue is whether the debtor lacks equity in the property. Equity, under § 362(d)(2)(A) of the Bankruptcy Code, "refers to the difference between the property value and the total amount of liens against it." In re 6200 Ridge, Inc., 69 B.R. 837, 842 (Bankr. E.D. Pa 1987) (citing, In re Liona Corp., 68 B.R. 761, 766 (Bankr. E.D. Pa 1987)). Here, the debtor does have equity in the property because the total value of Ozarks' collateral exceeds the value of its claim. The court does not need to address the second requirement under § 362(d)(2) because Ozarks has not proven that the debtor lacks equity in the property. Therefore, Ozarks is not entitled to relief from the automatic stay pursuant to § 362(d)(2).

Ozarks also asserts that the automatic stay should be lifted "for cause" pursuant to § 362(d)(1) because the debtor has not adequately protected Ozarks' interest. It is well settled that a creditor is adequately protected when the debtor has a sufficient equity cushion in the property. See In re Snead, No. 08-00070-8-JRL, 2008 Bankr. LEXIS 1160, *2 (Bankr. E.D.N.C. April 1, 2008) ("A creditor is adequately protected when a sufficient equity cushion exists in its

5

security."); see also United Savings Assoc. v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365 (1988).  As stated previously, the value of Ozarks' collateral exceeds the value of its claim. Therefore the court finds that the equity cushion suffices to adequately protect Ozarks' interest in the collateral, and that Ozarks is not entitled to relief from the automatic stay pursuant to § 362(d)(1).

Based on the foregoing Ozarks motion for relief from the automatic stay or in the alternative motion for adequate protection is **DENIED**.

## END OF DOCUMENT