**SO ORDERED.**

**SIGNED this 21 day of November, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | |
| 4.98 WESTGATE PARTNERS, LLC, | CASE NO. 11-05768-8-JRL |
| DEBTOR. | CHAPTER 11 |

## ORDER

This matter came before the court on the debtor's objection to Bank of Ozarks' ("Ozarks") proof of claim. A hearing was held on November 6, 2012, in Raleigh, North Carolina.

### BACKGROUND

The debtor is a single asset entity engaged in the business of developing real property in Brunswick County, North Carolina. On July 10, 2007, the debtor purchased a 4.98-acre tract of real property located on West Gate Drive in Leland, North Carolina (the "property") for $1,892,500.00. On September 22, 2008, the debtor executed a promissory note in favor of Woodlands Bank for $1,440,000.00. Ozarks, a successor-in-interest to Woodlands Bank, is the current holder of the note. As security for the note, Ozarks has a deed of trust on the property.

The debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 29, 2011. On August 5, 2011, Ozarks filed a proof of claim in the amount of

$1,488,324.07. On August 26, 2011, the debtor filed a motion for valuation of the collateral of Ozarks, stating that the debtor anticipated a plan of reorganization in which the debtor would surrender real property to satisfy Ozarks' debt. Ozarks filed a motion for relief from stay on October 20, 2011. A three-day hearing was held on October 24, 2011, November 4, 2011, and December 2, 2011, in Raleigh, North Carolina on the debtor's motion to value collateral and Ozarks' motion for relief from the automatic stay. Following the hearings, the court entered an order, dated December 7, 2011, finding the value of the property to be $1,649,077.00. This determination of the value of the collateral led the court to deny Ozarks' motion for relief from the automatic stay as the value of the collateral exceeded the value of Ozarks' claim. On April 4, 2012, Ozarks' filed an amended proof of claim in the amount of $1,575,354.72. The amended claim included postpetition interest and fees. The debtor objected to the amended claim on August 24, 2012, on the basis that the claim exceeds the value of the collateral.

At the hearing, counsel for the debtor argued that the present value of the collateral for plan confirmation purposes and all other purposes is $1,253,608.60. This number came from the chapter 11 plan treatment for Ozarks' claim wherein the debtor deducted various expenses and discounts from the court-determined value of $1,649,077.00.[1] After making those deductions, the $1,253,608.60 represented the secured portion of Ozarks' claim.[2] The debtor's counsel argued that this present value, determined after taking the Fazekas discounts, is what controls for determining whether the claim is secured or unsecured.

---

[1] An order confirming the chapter 11 plan in this case was entered on June 13, 2012.

[2] The discounts taken were in accordance with those taken in In re Fazekas where the fair market value was reduced to a present value in an indubitable equivalent analysis. No. 92-02262-8-JRL (Bankr. E.D.N.C. May 17, 1993).

-2-

Counsel for Ozarks' noted to the court that under the plan, Ozarks was treated as fully secured in order to avoid its controlling of the unsecured class and voting against the plan. Counsel argued that if these fees were not allowed as secured they should at a minimum be allowed as an unsecured claim.

## DISCUSSION

The debtor objects to Ozarks' claim on the grounds that the claim, with postpetition interest and fees, exceeds the value of the collateral. Under the debtor's view of the value, since the postpetition interest and fees exceed the value of the collateral, such interest and fees should be denied under § 506(b). The question of whether the postpetition interest and fees should be allowed, secured or unsecured, or denied, need only be addressed if the court finds that the creditor's claim in fact exceeds the value of the property. See In re Bath Bridgewater South, LLC, No. 11-06817-8-SWH, 2012 WL 4325650 (Bankr. E.D.N.C. Sept. 20, 2012) ("A determination of whether Capital is entitled to post-petition interest must be deferred until the court decides whether or not Capital is fully secured. 11 U.S.C. § 506(b)"). In Bath Bridgewater South, LLC, the court noted that valuation under § 506(a) is a preliminary determination to be made before moving on to a determination under § 506(b) of whether a creditor is entitled to postpetition interest or a determination of § 1129 issues. No. 11-06817-8-SWH, 2012 WL 4325650 at *4.

The court in In re Fazekas, No. 92-02262-8-JRL (Bankr. E.D.N.C. May 17, 1993) set forth a methodology for determining a present value which represented the indubitable equivalent of a creditor's claim. This three-step valuation process requires (1) a determination of fair market value of the property; (2) a reduction by 10% for liquidating costs; and (3) an

application of a discount rate to account for costs associated with the creditor's loss of money during the time the properties are unsold. Fazekas at *6-8. The valuation method employed in Fazekas determines the indubitable equivalent, under § 1129(b)(2)(A)(iii), of a claim when real property is to be surrendered. This method is not the appropriate valuation tool when determining the secured or unsecured status of a claim where the property is to be retained by the debtor.

Subsection 506(a)(1) of the Bankruptcy Code directs the court to determine the fair market value of property in evaluating the secured status of a creditor. Such determination under § 506 requires the court to take into account the purpose of the valuation and the proposed disposition or use of the property. 11. U.S.C. § 506(a)(1). However, the purpose of the valuation hearing is to set the value of the collateral in the case. Once the court sets the value of the property at a valuation hearing, that is the law of the case. If the debtor chooses to keep the property, that value is what the debtor has to pay. If it chooses to surrender the property, that value is also the value at which it would start the write down process to give the creditor the indubitable equivalent under § 1129(b)(2)(A)(iii).

Here, on the motion of the debtor, the court conducted a valuation hearing pursuant to §506 and determined the fair market value. That value is $1,649,077.00. The debtor relied on this valuation to rebuff a stay motion and prevent Ozarks from asserting an unsecured claim that would have made confirmation difficult. Ozarks' amended claim for $1,575,354.72 is less than the value of the collateral. Accordingly, the court finds that Ozarks' claim is fully secured and the debtor's objection to claim is **OVERRULED.**

**END OF DOCUMENT**